**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS**

**Justin Price,**

   **Plaintiff,**

**v.**               **Case No. 09-2513-JWL**

**Mill-Tel, Inc.,**

   **Defendant.**

## MEMORANDUM AND ORDER

Plaintiff Justin Price, individually and on behalf of others similarly situated, filed this wage and hour suit against defendant alleging violations of the overtime provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq. This matter is presently before the court on plaintiff's motion for temporary restraining order and preliminary injunction (doc. 76). In his motion, plaintiff asserts that defendant terminated the employment of opt-in plaintiff Damian Graves as a result of Mr. Graves' participation in this case for the purpose of punishing Mr. Graves and discouraging other employees from joining the case and that defendant has engaged in other coercive conduct for the purpose of discouraging employees from joining this case. Plaintiff seeks relief in the form of Mr. Graves' reinstatement with backpay and liquidated damages; notification by defendant to the putative class that its conduct with respect to Mr. Graves was retaliatory and unlawful; notification by defendant to the putative class of this case and their right to join this case free from fear of retaliation; and a cease and desist order precluding any other communications between defendant and putative class members about this case.

On April 14, 2010, the court held an initial hearing on plaintiff's motion during which the court rejected a threshold legal issue asserted by defendant[1] and, based on the parties' written submissions, scheduled an evidentiary hearing that was held on April 26, 2010.[2] The court has thoroughly considered the evidence and arguments presented at the hearing and is now prepared to issue its findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a). As will be explained, the motion is denied without prejudice to refiling in the event that defendant continues its efforts to discourage its employees from participating in this case.

**Factual Findings**

Plaintiff Justin Price and all opt-in plaintiffs are presently or were formerly employed by defendant as cable installers. Opt-in plaintiffs Keith Woolery, Damian Graves, Michael Penn, Esau Ilui and Joshua Tarango testified on behalf of plaintiff at the evidentiary hearing. As cable installers for defendant, they would receive at the start of each shift a certain number of "work orders" for the installation of residential cable services. According to defendant, the work orders assigned to each cable installer in a given week could be reasonably completed in 40 hours.

---

[1] Specifically, defendant asserted that the FLSA did not provide a private right of action to pursue preliminary injunctive relief for violations of the FLSA's anti-retaliation provision. Relying on *Bailey v. Gulf Coast Transportation, Inc.*, 230 F.3d 1333 (11th Cir. 2002), as well as numerous district court decisions since *Bailey*, the court rejected that argument.

[2] At the close of the hearing, the court granted plaintiff's motion for conditional certification of this case as a collective action pursuant to 29 U.S.C. § 216(b) of the Fair Labor Standards Act. The motion was unopposed by defendant.

2

Without exception, the cable installers testified that they typically needed between 50 and 60 hours each week to complete their assigned work orders. In any event, defendant's cable installers were required to keep track of their working hours on a daily basis and, at the end of each work week, were required to submit their hours for the week.

While the court need not and does not determine for purposes of plaintiff's motion whether defendant in fact violated the overtime provisions of the FLSA, substantial and compelling evidence was presented by plaintiff's witnesses–whom the court found highly credible–supporting the conclusion that defendant's pay practices with respect to its cable installers violates the FLSA. Numerous witnesses testified that John "Kip" McVey, defendant's General Manager for the Kansas City region, expressly instructed them to record only 40 hours of work per week regardless of whether they worked more hours. Mr. Graves testified that Mr. McVey required employees to modify their submitted hours to comport with the 40-hour maximum if an employee submitted a weekly hours report reflecting more than 40 hours. As a result, it is likely that the weekly hours submitted by defendant's cable installers frequently failed to correspond to the actual hours worked by those cable installers. It is also likely, then, that defendant, at least at times, failed to pay its cable installers for all hours worked.

In light of defendant's alleged pay practices, plaintiff Justin Price filed this collective action lawsuit and credible evidence was presented at the hearing that defendant actively attempted to dissuade employees from participating in the lawsuit. Mr. Iuli, for example, testified that Mr. McVey pulled him aside after the lawsuit was filed and asked Mr. Iuli for the names of the employees involved in the lawsuit so that Mr. McVey could "clean house." Mr.

Woolery testified that shortly after he filed his consent-to-join Mr. McVey told him that if the employees "were going to play the overtime game," defendant would win in the end. Against this backdrop, in early February 2010, defendant held individual, mandatory meetings with those employees identified by plaintiff in his Rule 26(a) disclosures as having knowledge of the allegations in plaintiff's complaint. These closed-door meetings were conducted by defendant's counsel in the presence of Jeffrey Tucker, defendant's Corporate Operations Director, and a court reporter. The meetings lasted as long as thirty minutes and were held in a fairly confined conference room, often times with the employee sitting immediately adjacent to Mr. Tucker.

Whatever defendant's intent, the net effect of these circumstances, including the comments made by Mr. McVey, was an intimidating, coercive environment in which the employees felt pressure to respond falsely to the questions posed by defendant's counsel for fear that truthful responses concerning defendant's overtime violations would jeopardize their employment with defendant. At the end of their individual meetings, each employee was asked to sign a statement. Although these statements were not introduced into evidence, the court infers from the evidence that the statements essentially asserted that the employees were not aware of any overtime violations committed by defendant or had not worked more than 40 hours in a given week. The employees, again with an eye toward maintaining their employment, signed the statements despite the fact that the statements were false in some or all respects.

On or about February 9, 2010, Mr. Tucker held a meeting at defendant's warehouse with defendant's employees in an effort to "clear the air" and reassure the employees that there would be no retribution from defendant against any employee for speaking with an attorney or joining

4

plaintiff's lawsuit. Nonetheless, Mr. Tucker's message did not reach many of the employees who had participated in the individual closed-door meetings the previous week because those employees were not at the warehouse during Mr. Tucker's presentation due to scheduling conflicts or other reasons. No effort was made to ensure that the employees who missed the warehouse meeting nonetheless understood that defendant would not retaliate against them for their participation in or communication about the lawsuit.

In mid-March 2010, defendant terminated the employment of opt-in plaintiff Damian Graves. The circumstances surrounding Mr. Graves' termination were hotly contested at the hearing. Mr. Graves testified that he had contacted plaintiff's counsel just days prior to his termination and presented evidence that he was terminated because defendant believed that he was "stirring up" other employees about the pending lawsuit. Defendant, on the other hand, presented evidence concerning issues related to plaintiff's job performance that were both ongoing and contemporaneous with the decision to terminate Mr. Graves' employment. In the end, the court declines to resolve these disputed facts because, having concluded that Mr. Graves will not suffer irreparable injury if the injunction is denied, the court does not reach the issue of whether Mr. Graves is substantially likely to succeed on the merits of his retaliation claim.

**Conclusions of Law**

Plaintiff's motion for preliminary injunction is based on the termination of Mr. Graves' employment and defendant's efforts to otherwise dissuade employees from participating in this

5

lawsuit. To prevail on his motion for a preliminary injunction, plaintiff must establish that four equitable factors weigh in his favor: (1) he is substantially likely to succeed on the merits; (2) he will suffer irreparable injury if the injunction is denied; (3) his threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest. *See Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1224 (10th Cir. 2009). In examining these factors, courts have consistently noted that because a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered. *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004).

Irreparable injury requires a showing of harm that cannot be compensated after the fact by monetary damages. *Chamber of Commerce of U.S. v. Edmondson*, 594 F.3d 742, 770-71 (10th Cir. 2010). Plaintiff has not shown or alleged any harm to Mr. Graves beyond financial loss. Mr. Graves' financial loss is insufficient to show irreparable harm because money damages are available to Mr. Graves at a later date should a jury find in his favor and those damages are adequate to compensate Mr. Graves for his injury. *See Sampson v. Murray,* 415 U.S. 61, 92 n.68 (1974) (irreparable harm not established in employment cases by financial distress or inability to find other employment unless "genuinely extraordinary" circumstances exist); *Conlay v. Baylor College of Medicine*, 2010 WL 774162, at *5-7 (S.D. Tex. Mar. 3, 2010) (no irreparable injury shown in employment case where money judgment would fully redress financial loss); *Coles v. Delaware River & Bay Auth.*, 2010 WL 335612, at *5-6 (D. Del. Jan. 29, 2010)

(denying motion for injunctive relief arising out of the termination of plaintiffs' employment; loss of wages and "injury to reputation and other injuries that are extant with a termination from employment . . . do not establish the kind of injury necessary for the court to use its injunctive power.").

In addition to alleging financial loss to Mr. Graves, however, plaintiff suggests that irreparable injury is threatened here because Mr. Graves' termination "carries with it the distinct risk that other employees may be deterred" from pursuing their rights under the FLSA. *Holt v. Cont'l Group, Inc.*, 708 F.2d 87, 91 (2d Cir. 1983) (irreparable injury may be found in retaliatory discharge case where there is specific evidence of a deterrent effect on the exercise of workers' rights); *accord Moore v. Consolidated Edison Co.*, 409 F.3d 506, 511-12 (2d Cir. 2005). The problem with this theory–at least with respect to the termination of Mr. Graves' employment–is that no evidence was presented that Mr. Graves' termination chilled the exercise of workers' rights or otherwise intimidated other employees such that Mr. Graves' termination, if not remedied immediately, might have a deterrent effect on other employees. Indeed, no witness other than Mr. Graves testified to any knowledge or belief that Mr. Graves' termination was related in any way to this lawsuit.

Moreover, the docket activity in this case leaves little doubt that Mr. Graves' termination has had little or no deterrent effect on other employees and, perhaps, has actually motivated other employees to exercise their rights. Specifically, the docket reveals that prior to Mr. Graves' termination in mid-March 2010, the highest level of participation in this lawsuit included named plaintiff Justin Price and six opt-in plaintiffs. Four of those opt-in plaintiffs subsequently

withdrew their consents such that, just prior to Mr. Graves' termination, only 2 opt-in plaintiffs remained in this lawsuit. Since Mr. Graves' termination and the initiation of these proceedings, however, eight individuals have opted in to the lawsuit, including Mr. Graves shortly after his termination, 3 individuals on the day of the initial hearing on plaintiff's motion, and 4 individuals on the day of the evidentiary hearing. Today, then, this case has 5 times as many opt-in plaintiffs as it did prior to the termination of Mr. Graves' employment. For the foregoing reasons, plaintiff has not shown irreparable injury relating to the termination of Mr. Graves' employment. *See Moore*, 409 F.3d at 511-12 (upholding denial of preliminary injunction where there was no evidence of witness intimidation or other chilling effects).

Plaintiff's motion also asserts that defendant has engaged in other coercive conduct, separate and apart from the termination of Mr. Graves' termination, for the purpose of discouraging employees from joining this case. Indeed, based on the evidence presented the court believes that defendant has engaged in coercive conduct for the purpose of attempting to dissuade its employees from participating in this lawsuit and the court is extremely troubled by the potential consequences of defendant's conduct. Nonetheless, the court is unable to conclude that irreparable harm will result unless an injunction issues. First, opt-in activity has increased significantly contemporaneous with these proceedings, indicating to the court that any actual chill on employees' exercise of their rights is waning and that defendant's employees understand that the court takes seriously its role in enforcing the FLSA and the protections that statute affords defendant's employees. Second, Mr. Tucker appears to the court at this juncture to be committed to establishing a workplace where employees are free from the threat of retaliation

for participation in this lawsuit. At the evidentiary hearing, Mr. Tucker, as defendant's corporate representative, was readily agreeable to posting the collective action notice in defendant's facilities and even offered to include in the notice a provision that precluded managers from speaking to employees about the lawsuit in any respect. These circumstances lead the court to believe that defendant, from this date forward, will honor the legal rights of its employees to participate in this lawsuit. The court, however, is denying this aspect of the motion without prejudice to refiling in the event that concerns of continued intimidation or other chilling effects arise.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's motion for preliminary injunction (doc. 76) is denied without prejudice to refiling in the event that defendant continues its efforts to discourage its employees from participating in this case.

**IT IS SO ORDERED.**

Dated this 27th day of April, 2010, at Kansas City, Kansas.

> s/ John W. Lungstrum
> John W. Lungstrum
> United States District Judge